Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2442 | **DATE** | 10/18/2004 |
| **CASE TITLE** | | Prescott, et al. vs. Allstate Life Insurance Co. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 11/3/2004 at 9:45 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss [17-1] is granted in part and denied in part. Defendant's motion to dismiss is granted with prejudice as to count three and without prejudice as to count five. Defendant's motion to dismiss count four is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 19 2004 | 23 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | GA | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| | | | date mailed notice | |
| RO | courtroom deputy's initials | 2004 OCT 18 PM 12:41 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# николаNORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMOS N. PRESCOTT, JR. and ) <br> R. DONALD PRESCOTT, as Trustees of the ) <br> AMOS N. PRESCOTT TRUST FBO AMOS ) <br> N. PRESCOTT JR. CIC AC/UAD 1/30/1976; ) <br> AMOS N. PRESCOTT JR., as Trustee of the ) <br> AMOS N PRESCOTT JR. TRUST; and ) <br> LOUISE H. PRESCOTT, Individually, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ALLSTATE LIFE INSURANCE CO., ) <br> ) <br> Defendant. ) | **DOCKETED** <br> **OCT 1 9 2004** <br><br><br><br> No. 04 C 2442 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Amos N. Prescott, Jr. and R. Donald Prescott, in their capacities as trustees of the Amos N. Prescott Trust; Amos N. Prescott Jr., in his capacity as trustee of the Amos N. Prescott Jr. Trust; and Louise H. Prescott ("Plaintiffs") bring suit against Allstate Life Insurance Company ("Defendant") for breach of contract, breach of the duty of good faith and fair dealing, conversion, and breach of fiduciary duty. Pending before the Court is a motion by Defendant to dismiss counts three, four, and five of the amended complaint, which are claims based on breach of the duty of good faith and fair dealing, conversion, and breach of fiduciary duty, respectively. For the reasons provided below, this Court partially grants and partially denies Defendant's motion to dismiss. (R. 17-1.)

## RELEVANT FACTS[1]

In 1995 and 1998, Plaintiffs—in order to execute a "highly confidential and proprietary asset allocation investment strategy"—entered into a series of variable annuity contracts with Defendant. (R. 2, Amended Compl. ¶¶ 9, 11-13.) The purpose of the annuity contracts was to allow Plaintiffs to transfer funds "quickly and freely" between investments, usually into and out of mutual funds and money market accounts. (*Id.* ¶ 9.) The annuity contracts contained express Integration Clauses, and Defendant represented that Plaintiffs would be able to execute their investment strategy unfettered by any restrictions not presented in the contracts. (*Id.* ¶¶ 9, 17, 19-20.) Relying on the terms presented by Defendant, Plaintiffs invested a total of $2,327,783.18 in the contracts and were successful in making profits greater than those which they could have gained without the flexibility of the annuity contracts. (*Id.* ¶¶ 15, 22.)

In December 2002 Defendant refused to honor Plaintiffs' request to transfer funds between certain investments. (*Id.* ¶ 23.) Defendant explained to Plaintiffs over the telephone that it had restricted transfers into certain funds to a maximum of $50,000 per day. (*Id.*) Plaintiffs had no prior written notice of the restrictions, although they later received undated letters confirming Defendant's modification of the annuity contracts. (*Id.*) The alterations limited transfers into Morgan Stanley Variable Investment Series Pacific Growth Fund, Investment Series European Growth Fund, and the Putnam VT International Growth Fund to $50,000 per day. (*Id.* ¶¶ 23-24.)

---

[1] The following facts are drawn from the amended complaint, which we take as true for purposes of a motion to dismiss. *Doherty v. City of Chi.*, 75 F.3d 318, 322 (7th Cir. 1996).

Further refusals to transfer funds occurred in October 2003. Defendant orally denied Plaintiffs' right to transfer funds and neglected to send them written notification of the restrictions until three months later. (*Id.* ¶ 25.) This second set of restrictions implemented a $50,000 per day maximum transfer for the following funds: Morgan Stanley Variable Investment Series, High Yield, Global Dividend Growth, Global Advantage, Universal Institutional Funds, Emerging Markets Equity, International Magnum, U.S. Mid Cap Value, and Mid Cap Growth. (*Id.*)

Plaintiffs discovered an additional set of transfer restrictions upon attempting to transfer funds in January 2004. (*Id.* ¶ 26.) This set of restrictions limited Plaintiffs to $50,000 daily transfers in twenty-two additional investment options. (*Id.*) Again Plaintiffs received no written notice of the limitations until after they had attempted transfers. (*Id.*)

Plaintiffs continued to use the annuity contracts to execute their investment strategy, placing funds in other investment options and making $50,000 transfers into the restricted funds when sensible. (*Id.* ¶ 34.) The restrictions on the annuity contracts, however, hampered Plaintiffs' investment strategy and they accordingly attempted to transfer "a majority" of their funds to investments not controlled by Defendant. (*Id.* ¶ 35.) The only restrictions expressed in the annuity contracts with respect to Plaintiffs' right to transfer their money out of the annuities were that any withdrawal be a minimum of $500 and that any withdrawal leaving less than $500 would be treated as a full surrender. (*Id.* ¶ 34.)

On February 25, 2004, Louise Prescott submitted a request that a majority of her funds be transferred to American Skandia, a Prudential Financial Company. (*Id.* ¶ 36.) Defendant timely honored her request. (*Id.*) "Shortly thereafter," the Amos N. Prescott and Amos N. Prescott Jr.

Trusts submitted requests that Defendant transfer a majority of their funds to American Skandia on March 3 and March 4. (*Id.* ¶ 37.) Defendant refused. (*Id.* ¶ 38.) Defendant indicated that it would not honor a request to transfer a portion of the funds and would only execute the transfer if Plaintiffs withdrew *all* of their funds from the annuity contracts. (*Id.*) On March 16, Plaintiffs demanded that Allstate honor their requests. (*Id.* ¶ 39.) On March 20, Defendant executed Plaintiffs' requested transfer, but valued the accounts as of March 16, rather than when Plaintiffs' request had been received. (*Id.*) The two-week delay caused Plaintiffs to lose approximately $301,000. (*Id.* ¶ 40.)

## LEGAL STANDARDS

This Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This Court will accept all well-pled allegations as true and draw all reasonable inferences in favor of the plaintiff. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A complaint states a claim if it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. "The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply." *Shah v. Inter-Continental Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002).

## ANALYSIS

### I. Count III: Breach of Duty of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the duty of good faith and fair dealing does not state a valid cause of action under Illinois law. Plaintiffs claim (as an alternative to their second breach of

4

contract claim) that Defendant breached its duty of good faith and fair dealing when it refused to timely honor Plaintiffs' fund withdrawal requests. Plaintiffs characterize Defendant's refusal as "capricious, intentional with an improper motive, outrageous and/or in a manner inconsistent with the reasonable expectations of the parties." (R. 2, Amended Compl. ¶ 51.) Illinois, however, does not recognize the contractual covenant of good faith and fair dealing as valid grounds for an independent tort action. *Cramer v. Ins. Exchange Agency*, 675 N.E.2d 897, 904 (Ill. 1996) (noting that "[t]o allow a bad-faith action would transform many breach of contract actions into independent tort actions. . . . A bad faith action would encourage plaintiffs to sue in tort, and not breach of contract, to avoid suit limitation clauses and the cap on the statutory remedy"); *see also Voyles v. Sandia Mortgage Corp.* 751 N.E.2d 1126, 1131 (Ill. 2001); *Johnstone v. Bank of Am. N.A.*, 173 F. Supp. 2d 809, 817 (N.D. Ill. 2001). As the Court recognized in *Lyons v. SBCI Swiss Bank Corporation Investment Banking, Inc.*, "Illinois courts, as well as courts in this circuit, have consistently stated that no independent cause of action exists for alleged breach of a covenant of good faith and fair dealing." No. 94 C 5448, 1995 WL 151810, at *2 (N.D. Ill. March 31, 1995). Accordingly, Plaintiffs fail to state a claim.

Plaintiffs attempt to characterize their claim as one that falls into an exception to the rule against tort claims arising from the contractual duty of good faith and fair dealing. Plaintiffs admit that the duty of good faith and fair dealing "is often denied as an independent source of a tort for the parties to a contract," but contend that "a cause of action under this tort still arises in certain circumstances, where as here, Allstate was given broad discretion in its performance." (R. 20, Pls.' Resp. at 8.) Plaintiffs point to two cases, *BA Mortgage & International Realty Corporation v. American National Bank and Trust Company of Chicago*, 706 F. Supp. 1364

5

(N.D. Ill. 1989) and *Oil Express National, Inc. v. Burgstone*, 958 F. Supp. 366 (N.D. Ill.1997), that recognize a cause of action arising derivatively from the covenant of good faith and fair dealing. (*Id.* at 8-10). The Illinois Supreme Court's more recent rulings, however, recognize an exception to the rule "*only* in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued a policy holder." *Voyles*, 751 N.E.2d at 1131 (emphasis added). This exception clearly does not encompass Plaintiffs' claim. Plaintiffs' claim for breach of the duty of good faith and fair dealing is therefore dismissed with prejudice.

## II. Count IV: Conversion

Plaintiffs' conversion claim survives Defendant's motion to dismiss. "Conversion is the unauthorized deprivation of property from a person entitled to its possession." *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 808 N.E.2d 606, 610 (Ill. App. Ct. 2004). To prove conversion, Plaintiffs must show: (1) Defendant's unauthorized assumption of control of Plaintiffs' property; (2) Plaintiffs' right to the property; (3) Plaintiffs' right to immediate possession of the property; and (4) Plaintiffs' demand for the immediate possession of the property. *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280, 285 (Ill. App. Ct. 2004). Plaintiffs allege that Defendant withheld Plaintiffs' identifiable funds which Plaintiffs had demanded and to which Plaintiffs had an unfettered and immediate right. As a result, they state a claim upon which relief may be granted.

Defendant asserts that Plaintiffs' claim for conversion cannot stand because the withheld funds represented a "general debt" owed to Plaintiffs, and that the claim appropriately sounds in debt rather than conversion. (R. 15, Def.'s Mot. at 5.) We are unable to say at this stage whether Defendant's characterization of the withheld funds as "debt" rather than as converted property is

6

appropriate. Drawing all inferences in favor of Plaintiffs, this Court declines to dismiss on this ground.

Defendants further argue that Plaintiffs have described the allegedly converted funds with insufficient specificity. (*Id.* at 6.) This argument also fails. Money need not be "earmarked" in order to sustain a claim of conversion. *Bill Marek's The Competitive Edge, Inc.*, 806 N.E.2d at 285. While "[a] right to an indeterminate sum is insufficient to maintain a cause of action in conversion," if the funds are "capable of being described, identified, or segregated in a specific manner," an action for conversion may be sustained. *Id.* Plaintiffs claim that the funds were "maintained in an identifiable fund," (R. 2, Amended Compl. ¶ 54), and that the converted funds were "of a clearly calculable amount capably [sic] of being identified." (R. 20, Pls.' Resp. at 11.) Defendant's argument regarding the ability to identify the funds may be appropriate in the context of summary judgment, but it cannot prevail at this stage. Plaintiffs have thus alleged facts in support of their claim of conversion sufficient to survive this motion to dismiss.

## III. Count V: Breach of Fiduciary Duty

Plaintiffs claim that "[d]ue to the investment component of the Annuity Contracts, Allstate owes Plaintiffs a fiduciary duty." (R. 2, Amended Compl. ¶ 65.) Plaintiffs further allege that Defendant breached that fiduciary duty when it imposed transfer restrictions on the annuity contracts and refused Plaintiffs' fund withdrawal requests. (*Id.* ¶ 66.) Although the amended complaint does not specify whether Plaintiffs bring suit under state or federal law, Defendant moves to dismiss both possible claims as untenable. (R. 15, Def.'s Mot. at 6-8.) Defendant argues that under Illinois law there is no fiduciary duty between contracting parties and that Plaintiffs' pleadings fail to state a claim within the governing federal statute. (*Id.*)

7

### A. State Law Claim

Plaintiffs have failed to state a claim of breach of fiduciary duty under state law. "It is well established under Illinois law that parties to a contract . . . do not owe a fiduciary duty to one another." *Burgstone*, 958 F. Supp. at 370 (citing *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992)). There are some circumstances, however, where a fiduciary relationship develops between contracting parties. Factors which suggest a fiduciary relationship include "the degree of business experience between the parties," *Oil Express Nat'l, Inc. v. Latos*, 966 F. Supp. 650, 651 (N.D. Ill. 1997), and the "extent to which the allegedly subservient party entrusts the handling of his business and financial affairs to the other . . . ," *In re Estate of Wernick*, 502 N.E.2d 1146, 1153 (Ill. App. Ct. 1986). Indeed, "a party must prove that it 'is heavily dependent upon the advice of another' in order to establish such a duty." *Burgstone*, 958 F. Supp. at 370 (quoting *Carey Elec. Contracting, Inc. v. First Nat'l Bank of Elgin*, 392 N.E.2d 759, 763 (Ill. App. Ct. 1979)). "[M]ere allegations that one businessman simply trusted another to fulfill his contractual obligations is certainly not enough" to establish such a duty. *Carey Elec. Contracting Inc.*, 392 N.E.2d at 764. Here, Plaintiffs have pleaded no facts to suggest that their dealings with Defendant were anything other than arms length, nor that Defendant played an advisory role with respect to Plaintiffs' investments. Because Plaintiffs allege nothing beyond normal contractual expectations, the state-law breach of fiduciary duty claim is dismissed.

### B. Federal Law Claim

Plaintiffs have also failed to state a claim of breach of fiduciary duty under federal law. Plaintiffs and Defendant agree that the variable annuity contracts in question are investment

8

contracts under federal securities law and that Defendant was subject to the duties imposed by the Investment Company Act of 1940 ("ICA") with respect to those contracts. 15 U.S.C. § 80a-35. Under §§ 36(a) and (b) of the ICA, private parties may bring claims for breach of fiduciary duty. *In re Nuveen Fund Litig.*, No. 94 C 360, 1996 WL 328006, at *6 (N.D. Ill. June 11, 1996). Plaintiffs claim that Defendant, in imposing the transfer restrictions and refusing Plaintiffs' requested fund withdrawals, violated the fiduciary duty imposed by the ICA.

Section 36(a) provides a claim against a defendant who "has engaged... in any act or practice constituting a breach of fiduciary duty involving personal misconduct...."[2] 15 U.S.C. § 80a-35(a). Defendant moves to dismiss Plaintiffs' claim under § 36(a) because "plaintiff has failed to plead personal misconduct or self-dealing." (R. 22, Def.'s Reply at 6.) Indeed, § 36(a)

---

[2] The text of § 36(a) provides:

The Commission is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States, alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts--

(1) as officer, director, member of any advisory board, investment adviser, or depositor; or
(2) as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.

If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 80a-1(b) of this title.

15 U.S.C. § 80a-35(a).

9

does not provide redress for a general breach of fiduciary duty. Rather, a cognizable claim must contain allegations of a breach "involving personal misconduct;" to hold otherwise would render these modifying words in the statute superfluous. While other courts have adopted more liberal standards for section 36(a) claims, *see, e.g., Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 927 (S.D. Tex. 1998), we find that "personal misconduct" refers to "misconduct that involves self-dealing by investment company or other insiders." *Nuveen*, 1996 WL 328006 at *11. As the *Nuveen* court noted, "Congress adopted the ICA primarily to address the unique problems of investment adviser self-dealing in the investment fund industry." *Id.* at *10. Plaintiffs do not allege any self-dealing or even personal impropriety by Allstate and therefore fail to state a claim under § 36(a).

Section 36(b) allows a claim "for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment advisor or person." 15 U.S.C. § 80a-35(b). Plaintiffs have not pled any facts nor made any arguments with respect to this subsection. In the interest of thoroughness, the Court concludes that the pleadings do not sustain a claim under this section of the statute. *See Nuveen*, 1996 WL 328006 at *14 (noting that "every court addressing a § 36(b) claim has required the plaintiff to demonstrate that the compensation or payment received by the investment adviser was disproportionate to the services rendered"). For the reasons set forth in this subsection, we dismiss Plaintiffs' federal claim of breach of fiduciary duty.

## CONCLUSION

For all of the reasons provided above, this Court partially grants and partially denies Defendant's motion to dismiss. (R. 17-1.) Defendant's motion to dismiss is granted with

prejudice as to count three (the breach of the covenant of good faith and fair dealing claim) and without prejudice as to count five (the state and federal breach of fiduciary duty claims). Defendant's motion to dismiss count four (the conversion claim) is denied.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: October 18, 2004